## No. 12,187.

### KITT *v.* RUNGE.

Decided December 9, 1929.

Mr. STOTON R. STEPHENSON, for plaintiff in error.

Mr. BEN L. GARMAN, for defendant in error.

*In Department.*

Mr. Justice Butler delivered the opinion of the court.

William M. Kitt sued Henry Runge for damages for an alleged breach of contract. Runge filed a counterclaim for specific performance of the same contract. The court held with Runge both on the complaint and counterclaim.

On July 14, 1927, the parties contracted to exchange Kitt's land in Weld county, Colorado, for Runge's land in the Province of Alberta, Canada, and $1,000 in cash. The contract contained these provisions: "It is understood and agreed between the parties hereto, that the $1,000.00 cash payment is not to be made until October 1, 1927, at which time the transfers are to be made and deeds delivered. * * * And it is further agreed that in case either of the parties hereto shall fail to perform the stipulations of this contract or any part of the same, the failing party shall pay the other party to this contract the sum of Five Hundred ($500.00) Dollars, as damages for non-fulfillment of contract. * * * This deal to be finally consummated on or before October 1, 1927, thru the Citizens State Bank at Holyoke, Colorado." Runge was unable to convey clear title to his land on October 1, 1927, and Kitt, claiming that time was of the essence of the contract, contends that he is entitled to judgment in the sum of $500, the amount specified in the contract as damages for breach of the contract. Runge, on the other hand, claims that time was not of the essence of the contract, and the trial court decided that question in his favor. In so doing, did the court commit reversible error? That is the sole question presented for our consideration.

1. Time is not of the essence of a contract, unless it is made so, either specifically or by the circumstances of the case. *Foster v. Coffey,* 71 Colo. 171. In the present contract time was not specifically made of the essence of the contract, but Kitt contends that the circumstances made it such. It is said that Kitt expected to live

on the Canadian farm; that Runge must have known that it would take some time for Kitt to gather and dispose of his Colorado crops, and sell his livestock, farm machinery and household goods, and erect buildings on the Canadian farm (there being none there) to shelter himself and his family; and that after November 4, 1927, it would be too late for him to move to the Canadian farm and profitably farm it for the year 1928.

There was a mortgage on the Canadian farm, and the inability of Runge to convey clear title on October 1, was due to the mortgagee's delay in executing and mailing the release. The release finally was received, and the certificate of Runge's ownership of the property was then obtained and was promptly deposited in the Citizens State Bank at Holyoke, Colorado, on November 4, 1927. The evidence is to the effect that Runge did everything he could do to get the release by October 1; that the mortgagee lived in eastern Canada, and did not attend to the matter at once. On October 1, Runge paid into the Citizens State Bank at Holyoke, Colorado, the $1,000 called for by the contract. Shortly after the contract was made in July Kitt, with Runge's consent, caused some of the Canadian land to be "broken." Runge testified that on October 1, Kitt expressed regret at having signed the contract, and said that he was sick of his deal. Kitt denied this. Runge also testified that the following conversation was held on October 1: "I asked him when he intended to move up there. Well, he said he would like to move in October, some time in October, but he didn't think he could move. He probably would have to stay until spring, because he had quite a bit of crop to take care of. 'Well,' I says, 'Now if you can't move now you don't need to be in, a hurry about these papers.' I says, 'These papers will be here in a few days,' and I don't know whether it was that same day or afterwards when he asked me to rent, whether he couldn't rent the [Weld county] land for another year and stay another year, and I told him yes, he could." Kitt denied that any such conversation

was held. The undisputed evidence is to the effect that on October 1, Runge told Kitt that if the latter wanted to move onto the Canadian land Runge would deposit any amount of money that Kitt thought he ought to have to pay his expenses in the event that the exchange was not consummated.

In an oral opinion, the trial court said: "In the instant case nothing has been shown that would justify the court in holding that time was of the essence of the contract. The plaintiff says he could not move to Canada and construct his buildings, etc., after November 4th. The contract was to have been completed on October 1st, and from October 1st to November 4th is not such a length of time as ordinarily would make such a difference as the plaintiff claims, namely, that he could construct his buildings after October 1st, but could not after November 4th. It is possible, but not probable, that the delay of a month in this particular case would work such hardship to the plaintiff as he suggests; and the court is of the opinion that the real reason of the plaintiff's refusal to carry out the contract is that he became dissatisfied with the contract after he had entered into it, and on October 1st, when the contract was to have been completed and was not, the plaintiff concluded he had discovered a means of avoiding the contract. The fear that the plaintiff claims he experienced respecting his going to Canada and constructing buildings upon the premises before the deal was completed seems to the court to be unfounded, when the undisputed testimony in the case shows that the defendant agreed to deposit any necessary money in order to guarantee to the plaintiff that he, the defendant, would go through with the deal and deliver his papers according to the contract, and this offer was made to the plaintiff on October 1st. The court is further of the opinion that the defendant has shown a reasonable excuse for his failure to perform within the time. He paid off a mortgage and attempted to get a release, and the man who was to execute the release neglected to execute the proper

papers, and it was some thirty-five days after the deal was to have been completed before the defendant secured the necessary release of the encumbrance on the Canadian land. The defendant did what he could to expedite matters, and through no fault of his own, but through the fault of somebody else, he was unable to make the delivery of the necessary papers on the specific date mentioned in the contract."

The trial court's opinion, findings and decree are supported by the evidence.

The judgment is affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.