**SEISMIC INTERNATIONAL RE-
SEARCH CORPORATION,**
Plaintiff-Appellant/Cross-Appellee,

v.

**SOUTH RANCH OIL COMPANY, INC.,**
Defendant-Appellee/Cross-Appellant.

Nos. 83–2036, 83–2085.

United States Court of Appeals,
Tenth Circuit.

June 3, 1986.

C. Nelson Berry, III of Thoreson, Yost, Berry & Matthews, Seattle, Wash., and Charles N. Berry, Jr. of Berry & Spooner, Oklahoma City, Okl., for plaintiff-appellant/cross-appellee.

Daniel R. O'Neill of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo. (Michael G. Biggers of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., and Richard P. Hix of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., with him on briefs), for defendant-appellee/cross-appellant.

Before McKAY and LOGAN, Circuit Judges, and CROW, District Judge.*

McKAY, Circuit Judge.

This is an appeal from a final judgment in a breach of contract action. The plaintiff, Seismic International Research Corporation (SI), was formed by Stanley D. Brasel to provide consulting services and computer processing of geophysical data for the oil and gas industry. The defendant, South Ranch Oil Co., Inc. (SROC), was a general partner in numerous limited partnerships. It drilled oil and gas wells, operated drilling rigs, and developed drillable prospects.

SI entered into several contracts to perform seismological work for SROC. Some time later, SROC directed SI to stop work on the contracts and not to do anything more for SROC that would cost SROC any more money. Thereafter, SI sued SROC for its failure to pay the remaining balances due under the contracts. SROC countersued for recovery of amounts already paid. While this suit was pending,

---

* Honorable Sam A. Crow, United States District Judge for the District of Kansas, sitting by desig- nation.

Mr. Brasel died. The dispute proceeded to a jury trial in which SI prevailed and was awarded $239,334.56. SI appeals from two post-trial orders: one denying SI's motion for attorney's fees and another denying SI's motion to compel assignment of certain royalty interests to the estate of its deceased president, Mr. Brasel. SROC cross-appeals the denial of certain jury instructions, the imposition of certain discovery sanctions, and the denial of a directed verdict. We first consider SROC's contentions.

## I.

SROC claims that the trial court committed reversible error because it refused to instruct the jury on SROC's claim for tortious interference with a fiduciary relationship. SROC bases its tort claim on an undisclosed $28,000 payment that SI made to Norman Stafford, an SROC employee. Mr. Stafford was SROC's only geophysicist. He was assigned to monitor SI's performance and to approve bills for its work. SROC claims that the $28,000 payment was a kickback designed to induce Mr. Stafford to approve SI bills even though work was not properly completed. SI admits it made the $28,000 payment, but contends the payment was a sales commission for Mr. Stafford's help in locating a buyer for SI's field crews.

The record indicates the trial court's reason for refusing to instruct on the tort claim. SROC anticipated the claim well before trial; it is mentioned in SROC's First Amended Answer and Counterclaims. Record, vol. 3, at 594. SROC's attorneys, however, failed to submit the tort-claim instructions to the court three days before trial, as required by the Order at Pretrial. See Record, vol. 1, at 48 (Order at Pretrial). Instead, they submitted the instructions the day the trial began. The court ruled that this submission was too late, and entered a minute order denying SROC's motion to add the tort-claim instructions because of "failure to adhere to Local Rule 14." Record, vol. 4, at 931; vol. 9, at 551.

SROC strenuously argues that it presented sufficient evidence for the court to instruct on its tort claim. But it does not argue that the court misapplied Local Rule 14 or abused its discretion in denying the instructions because they were filed late. Indeed, no mention of Local Rule 14 is made in the briefs. Counsel's failure to focus on the reasons the trial court denied the requested instructions leaves us without a basis for assigning error to the trial court's decision.

## II.

SROC further argues that the district court committed reversible error by instructing the jury that SROC was bound by Norman Stafford's actions and omissions. SROC argues specifically that the court created this impression through its instructions on four doctrines of contract modification: waiver, oral modification, interpretation by conduct, and ratification. SROC does not appear to allege that the instructions themselves misstate relevant law. Rather, it argues that the jury was not fully informed that SROC should not have been bound by an allegedly bribed employee. In essence, SROC argues that the trial court should have supplemented the contract-modification instructions with an explanation of how the $28,000 payment to Mr. Stafford affected SROC's contractual obligations.

Considering the jury instructions as a whole, see, e.g., McGrath v. Wallace Murray Corp., 496 F.2d 299, 301 (10th Cir.1974), we do not believe that the jury was misled. The contract modification instructions were accompanied by a good-faith instruction informing the jury that each party had an implied obligation under the contract "to act in good faith and with fair dealing." Record, vol. 4, at 950. This instruction informed the jury that it could find SI to have breached its contract if the jury accepted SROC's kickback argument. Furthermore, counsel for SROC had ample opportunity to comment during closing argument on the court's instructions on waiver, oral modification, interpretation by con-

duct, and ratification. Indeed, SROC's attorney did so, explaining that Mr. Stafford's receipt of the undisclosed $28,000 payment should affect the jury's application of the contract-modification doctrines. *See* Record, vol. 9, at 529–30. Therefore, we do not believe the court erred in refusing to supplement the instructions that dealt with contract modification.

### III.

SROC also argues that the district court erred in instructing the jury that SROC had to prove a material breach to recover on its contract counterclaims. This argument apparently refers to jury instruction number 10, which contains the phrase: "[I]n order to prevail upon its claim, the defendant must prove that the plaintiff's performance was neither in literal compliance with the contract nor in substantial compliance with the contract." Record, vol. 4, at 951. SROC states that the instruction was given in error because it prevented SROC from recovering damages "for whatever breaches it was able to prove." Appellee's Brief at 37.

■ Jury instruction number 10 was not given in error. That instruction was a correct statement of the law where a party seeks to excuse its performance altogether. *See Joyce v. Davis*, 539 F.2d 1262, 1266 (10th Cir.1976); *Kole v. Parker Yale Development Co.*, 536 P.2d 848, 849–50 (Colo. App.1975). Moreover, instructions 11 and 12 properly informed the jury as to the amount of damages that should be recovered. They stated that where a party has substantially, but not literally, complied with its contractual obligations, the proper measure of damages is the contract price less the cost of completing performance. In other words, those instructions informed the jury that it could award damages for any breaches it found. Because jury instructions must be considered as a whole in connection with all other instructions given, *see, e.g., McGrath*, 496 F.2d at 301, SROC's argument that instruction number 10 misled the jury is without merit.

### IV.

In addition, SROC argues that the trial court abused its discretion when it orally issued a protective order in favor of SI. The order prevented SROC from copying "vector scan" work which SI had allegedly done for SROC. The court entered the order because counsel for SROC had earlier misrepresented to the court that it had been granted relief from the Pretrial Order. The court later commented on its decision when it denied a motion to reconsider the protective order:

> MR. BERRY [counsel for SI]: Yes, your Honor. If you will recall, your Honor, there was a problem with the representation made about an order that the Court made. When you came from your chambers—
>
> THE COURT: A lawyer from St. Louis that flat either lied to me or hadn't done his homework. Yes, I remember it very well.
>
> MR. BERRY: And when you came from your chambers, your Honor, you said—
>
> THE COURT: I said whatever other motions you have got, I'm going to hold adversely to his position just as sort of a penalty for misleading or attempting to mislead the Court. Yes, that lawyer just flat misstated what the court had ordered in a prior [ruling].

Record, supp. vol. 8, at 9.

■ The record indicates that the court did not carefully weigh the severity of the penalty imposed by the sanction against the harm produced by the misstatement of SROC's counsel. Sanctions under Rule 16(f) or preexisting common law should be entered only after a careful consideration of both the misleading activity by counsel and the severity of the punishment imposed by the sanctions. *See Joplin v. Southwestern Bell Telephone Co.*, 671 F.2d 1274, 1276 (10th Cir.1982) (dismissal for failure to file pretrial statement). Moreover, a court should, when possible, enter sanctions against counsel, and not the parties they represent. *See Herzfeld & Stern v. Blair*, 769 F.2d 645, 647 (10th Cir.1985).

Despite the court's apparent failure to employ a balancing test, we do not believe its decision to prohibit SROC from copying the "vector scan" documents is reversible error. SROC had the opportunity to inspect the documents and subpoena them for trial. Indeed, SI made the "vector scan" documents available for inspection. *See* Record, vol. 1, at 59. Because SROC had access to these documents, the trial court's sanctions, though not carefully weighed at the time they were imposed, constitute harmless error. *See* Fed.R. Civ.P. 61; *Nulf v. International Paper Co.*, 656 F.2d 553, 561 (10th Cir.1981) ("Errors which could not have prejudiced the unsuccessful party afford no right of reversal of the judgment.").

### V.

Finally, SROC argues that a directed verdict should have been granted in its favor. Applying our stringent standard for granting such a motion, we are unable to say—after viewing all the evidence in the light most favorable to SI, the nonmoving party—that the case should have been removed from the jury in this strongly contested trial. *See Sharon Steel Corp. v. Lakeshore, Inc.*, 753 F.2d 851, 853–54 (10th Cir.), *cert. denied sub nom. Prudential Federal Savings and Loan Association v. Equal Employment Opportunity Commission,* —— U.S. ——, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).

### VI.

In its appeal, SI argues that the trial court erred in refusing to order SROC to convey certain overriding royalty interests to the estate of Stanley D. Brasel. SI's claim is based on the judgment of the jury in favor of SI for the full amount claimed on the Northwest Oklahoma contract. That contract was accompanied by an "Agreement of Contract and Services," which stated that SROC would convey the royalty interests directly to Mr. Brasel. Record, vol. 6, plaintiff's exhibit 2. Although SI prevailed on its contract claim, the trial court denied SI's request for specific performance of the agreement to convey those interests to the estate of Mr. Brasel. This denial was based on the trial court's apparent judgment that Mr. Brasel was a party to the contract and that his estate thus had to bring suit directly to receive payment of the royalty interests. *See* Record, supp. vol. 9, at 7.

We reject the trial court's position. Because we have the contract before us, we are not limited to reviewing under the "clearly erroneous" standard the trial court's apparent determination that Mr. Brasel was a party to the contract. *See Southwestern Stationery & Bank v. Harris Corp.*, 624 F.2d 168, 170 (10th Cir.1980). The document indicates that, although Mr. Brasel signed the "Agreement of Contract and Services," he did so in the space designated for the representative of SI (just as SROC's representative signed in the corresponding space designated for SROC). No other individual signed for SI. *See* Record, vol. 6, plaintiff's exhibit 2. Indeed, the document's title indicates Mr. Brasel's representative capacity. It reads, "Agreement of Contract and Services by Stan D. Brasel, Consultant & President of Seismic International Research Corp." *Id.* Because Mr. Brasel signed the contract in his representative capacity, SI could properly bring suit directly for the estate of Mr. Brasel as a third-party beneficiary.[1] We see no reason that his estate had to be joined directly as a party in order to receive relief. *See* Fed.R.Civ.P. 17(a); *Prudential Oil & Minerals Co. v. Hamlin*, 277 F.2d 384, 387 (10th Cir.1960); *cf. P & M Vending Co. v. Half Shell of Boston, Inc.*, 41 Colo.App. 78, 81, 579 P.2d 93, 95 (1978) ("[E]ven if the contract involved here was entered into for the benefit of plaintiff's

---

1. Counsel for SI confused the issue by misstating to the court that it had not alleged that it was bringing suit on behalf of the estate of Mr. Brasel. *See* Record, supp. vol. 9, at 6. SI, however, stated in its pleadings that it was suing "to assign Stan Brasel, or his assigns, overriding interests in the leases" that were the subject of the Northwest Oklahoma contract. *See* Record, vol. 1, at 2.

parent corporation, plaintiff was a real party in interest entitled to bring the action without joining its parent corporation."). Therefore, we hold the trial court erred in failing to grant SI's equitable claim seeking specific performance of SROC's agreement.

## VII.

 SI also seeks an award of attorney's fees under Colo.Rev.Stat. §§ 13–17–101 to –102 (Cum.Supp.1985), which provides for such an award against a litigant whose claims are frivolous or groundless. First, SI charges that SROC's claim of fraudulent inducement warrants an attorney's fee award. SROC, however, dropped this claim before trial when discovery produced a document that apparently affected SROC's view of this issue. *See* Record, vol. 4, at 873. We hold that this claim was voluntarily dismissed within a reasonable time after discovery of the document; thus Colo.Rev.Stat. § 13–17–102(5) (Cum.Supp. 1985) precludes an attorney's fee award based on this claim.

 Second, SI argues that SROC brought frivolous or groundless claims when it joined Mr. Brasel and when it alleged that SI and Mr. Brasel breached their fiduciary duties. SI, however, falls far short of demonstrating that these claims were "not supported by any credible evidence at trial," or that there was "no rational argument based on the evidence or law" to support these claims. *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1069 (Colo.1984) (en banc). We are not persuaded by mere assertions in SI's brief that SROC exercised bad faith or that it made no attempt to determine the sufficiency of its evidence. *See* Appellant's Brief at 18–19. SI makes no citation to the record regarding the absence of merit of SROC's claims against Mr. Brasel or of its breach-of-fiduciary-duty claim. *See id.* at 18–20. (SI does point out that SROC dropped its claims against Mr. Brasel after the evidence was presented at trial, *id.* at 18–19, but this fact does not prove that the claims were meritless: SROC may have dismissed

its claims against Mr. Brasel for tactical reasons unrelated to the merits of the claims.) Thus, SI does not demonstrate that the trial court erred in denying attorney's fees on SROC's claim against Mr. Brasel and on its claims that SI and Mr. Brasel breached their fiduciary duties.

 Finally, SI asserts that SROC brought a groundless or frivolous claim when it charged that SI induced Mr. Stafford to breach his fiduciary duty by paying him $28,000. We reject this argument as patently flawed. Even though procedural errors of SROC's counsel kept SROC from pursuing this claim at trial, *see supra,* part I, the claim was supported by "credible evidence." *See Western United Realty,* 679 P.2d at 1069–70. SI did not deny that it made an undisclosed $28,000 payment to Mr. Stafford when he was approving SI's contract work for SROC. Thus the claim was not frivolous or groundless.

AFFIRMED IN PART AND REVERSED IN PART.